**Dated: August 25, 2021**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| ASHWIN NAMBAKAM, | ) | Case No. 19-13549-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |
| —————————————— | ) | |
| | ) | |
| OIL STATES INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 19-01108-SAH |
| | ) | |
| ASHWIN NAMBAKAM, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING OIL STATES INDUSTRIES, INC.'S MOTION
FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT AND
<u>NOTICE OF OPPORTUNITY FOR HEARING [DOC. 18]</u>**

On June 21, 2021, plaintiff Oil States Industries, Inc. ("Oil States") filed the

Oil States Industries, Inc.'s Motion for Summary Judgment with Brief in Support and

Notice of Opportunity for Hearing [Doc. 18] (the "Motion"). On July 7, 2021, defendant

Ashwin Nambakam ("Debtor") filed Ashwin Nambakam's Opposition to Oil States Industries,

Inc.'s Motion for Summary Judgment and Request for Hearing [Doc. 19] (the "Objection").

Oil States subsequently amended the Motion by filing the Oil States Industries, Inc.'s

Amendment to Motion for Summary Judgment [Doc. 18] with Notice of Opportunity for

Hearing [Doc. 20], on July 12, 2021 (the "Amendment"; the Motion as amended by the

Amendment, the "Amended Motion").  On July 26, 2021, Debtor filed Ashwin Nambakam's

Amended Opposition to Oil States Industries, Inc.'s Motion for Summary Judgment [Doc. 22]

(the "Amended Objection").

## JURISDICTION

The Court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1334(b), and venue

is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper pursuant

to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I).

Furthermore, Oil States consents to entry of final orders and judgment by the Court in this

adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7008.  Debtor does not

dispute the Court's jurisdiction, however, he "does not consent to the entry of a judgment of

nondischargeability of his debts." [Doc. 5].  Debtor's baffling position is of no consequence; the

Court unquestionably has jurisdiction to enter a final judgment as to the dischargeability of his

debts.  Johnson v. Riebesell (In re Riebesell), 586 F.3d 782, 793 (10th Cir. 2009).

## INTRODUCTION

This adversary proceeding concerns a debt arising from a state court action filed in the

District Court of Oklahoma County, Oklahoma, Case No. CJ-2017-3496 (the "State Court

Action" and the "State Court," respectively).  In the State Court Action, Oil States sought

damages and injunctive relief for the theft of confidential, trade-secret information by former

employees, including Debtor.  Due to repeated, egregious discovery misconduct, Oil States obtained a default judgment against Debtor as a sanction, finding him liable on each of Oil States' claims, including misappropriation of trade secrets and breach of duty of loyalty.  A bench trial was conducted on remedies, and a judgment was entered against Debtor in favor of Oil States in the aggregate amount of $563,686.17.  Oil States now seeks to have the debt excepted from Debtor's discharge pursuant to 11 U.S.C. § 523(a)(4) and (6), relying on issue preclusion to support its request for summary judgment.

For the reasons set forth below, Oil States' Amended Motion is granted.

## UNDISPUTED MATERIAL FACTS

"'Necessary to the effective rebuttal of a summary judgment motion is the non-moving party's demonstration that genuine issues of fact remain.  Non-moving parties raise genuine issues of material fact by controverting the moving party's factual averments with particularity.'" American Express Bank v. Mowdy (In re Mowdy), 526 B.R. 63, 73 (Bankr. W.D. Okla. 2015) (citing Bank of Cushing v. Vaughan (In re Vaughan), 342 B.R. 385 (10th Cir. BAP 2006)).  In opposing a properly supported motion for summary judgment, a party cannot rely on mere allegations or general denials but must come forward with specific and material facts, established by probative evidence.  Mowdy, 526 B.R. at 73 (citing State Farm Fire and Cas. Co. v. Edie (In re Edie), 314 B.R. 6, 18 (Bankr. D. Utah 2004)).  Debtor's burden to controvert Oil States' facts "'requires more than what was put forth in this case.'"  Mowdy, 526 B.R. at 73 (citing Vaughan, 342 B.R at 385).  His choice to provide no affidavit or any other evidentiary materials to support his denial of Oil States' statement of undisputed facts, which were properly supported by the record before the Court, failed to create any disputed material facts.

For purposes of the Amended Motion, the Court finds no genuine dispute exists as to the following material facts:

1. On June 20, 2017, Oil States filed the State Court Action.  Amended Motion, Exhibit 1.

2. In the State Court Action, Oil States alleged Debtor and others conspired to steal, and stole, vast amounts of confidential, trade-secret information from their employer, Oil States Piper Valve ("Piper"), a division of Oil States, to form a competing valve company, Legacy Valve Systems, LLC ("Legacy").  Such information included customer lists, confidential product cost information, valve drawings, and other technical documents detailing Piper's manufacturing process and quality control measures (the "Trade Secrets").  Amended Motion, Exhibit 2.

3. In the State Court Action, Debtor was always represented by counsel.  Amended Motion, Exhibits 1, 3, 4, 5, 6, and 7.

4. On November 19, 2018, Oil States filed a Motion for Sanctions for Defendants' Spoliation of Evidence in the State Court Action (the "Sanctions Motion").  In the Sanctions Motion, Oil States submitted indisputable evidence that, while employed by Oil States, Debtor deliberately stole Oil States' Trade Secrets and tried to cover up such conduct by destroying evidence in violation of his duty to preserve evidence.  Oil States also presented evidence Debtor destroyed evidence in violation of court orders and knew his conduct was wrongful.  Amended Motion, Exhibit 8, at 3-7.

5. On February 19, 2019, the State Court conducted a hearing on the Sanctions Motion, and counsel for Debtor appeared at the hearing.  During the hearing, the State Court specifically found:

4

> Defendants' failure to comply with the Court's discovery
> orders, failure to comply with the Court's Temporary Injunction,
> spoliation of evidence, and perjury were all done willfully,
> maliciously, and in bad faith. Defendants' conduct suggests an
> intentional attempt to deprive Oil States of documents necessary
> to prove its damages and to interfere with the judicial system.

Amended Motion, Exhibit 13, p. 6, ¶ 26.  The State Court further held, "Defendants flagrantly disobeyed multiple Court orders, hid their financial information and communications, and wasted Oil States' and the Court's time and resources."  Amended Motion, Exhibit 13, p. 6, ¶ 28.

6. Following the hearing, the State Court entered a Journal Entry ("Sanctions Order") finding, among other things:  (a) Debtor's duty to preserve evidence arose no later than May 1, 2017; (b) Debtor committed spoliation by destroying evidence after the duty to preserve arose; and (c) Debtor violated court orders by destroying evidence.  As a sanction for his conduct, the State Court awarded Oil States attorney fees and costs of $47,563.13 (the "Sanctions Award").  Amended Motion, Exhibit 9.

7. As the State Court Action progressed, Debtor and his co-defendants continually failed to produce necessary discovery despite warnings from the State Court their continued failure to produce would result in judgment against them.  Their obstinance continued, and the State Court ultimately granted default judgment as a sanction for their conduct, finding Debtor and his co-defendants liable on each of Oil States' claims, including misappropriation of Trade Secrets under Okla. Stat. tit. 78, § 86(4) and breach of the duty of loyalty.  Amended Motion, Exhibits 11, 12, and 13 (Journal Entry of Judgment (the "Default Judgment")).

8.    On March 16, 2020, the State Court conducted a bench trial to determine the remedies to be awarded to Oil States per the Default Judgment. To determine the appropriate remedies, the State Court heard and considered evidence of Debtor's conduct.  Debtor was represented by counsel at the trial on damages.  Amended Motion, Exhibits 1, 13 and 14 (Findings of Fact and Conclusions of Law (the "Findings and Conclusions")).

9.    On November 9, 2020, the State Court entered its Findings and Conclusions, followed by the Final Journal Entry of Judgment entered February 24, 2021 (the "Final Judgment"), in the State Court Action.  Amended Motion, Exhibits 14 and 15.  In both the Findings and Conclusions and the Final Judgment, the State Court found Debtor deliberately and intentionally caused injury to Oil States,[1] and each defendant in the State Court Action, including Debtor, was motivated by hatred, spite and ill-will.[2]  Amended Motion,

---

[1]Specifically, the State Court found, while still employed at Oil States, Debtor acquired confidential information of Oil States and downloaded Oil States' Trade Secrets during his employment at Oil States, which information was then used by Legacy to create technical drawings for Legacy's benefit.  Amended Motion, Exhibit 14, pp. 10-11, ¶¶ 10, 11 and 13. Debtor then used Oil States' files to aid Legacy in establishing its business and in creating technical drawings for Legacy Valve.  Amended Motion, Exhibit 14, pp. 11-12, ¶¶ 15 and 16. Debtor took and used Oil States' information and drawings even though he knew his actions were wrongful and, in fact, unlawful.  Amended Motion, Exhibit 14, pp. 12, ¶ 20, 14, ¶ 29.a. and 21, ¶ 51.  Debtor knew that his employment relationship with Oil States prohibited him from using or disclosing Oil States' technical drawings, and Debtor knew that he was doing something unlawful in downloading Oil States' technical drawings for Legacy's use.  Amended Motion, Exhibit 14, p. 12, ¶ 22.  Debtor even formulated lies to tell Oil States regarding Legacy, Debtor's resignation, and Legacy's use of Oil States' drawings.  Amended Motion, Exhibit 14, pp. 13-14, ¶¶ 25, 26, and 27.

[2]Debtor also committed intentional spoliation by destroying evidence after his duty to preserve began.  Debtor deleted Oil States' drawings from his computer after forwarding them to Decker and wiped his phone clean.  Debtor further testified falsely in a deposition, stating Legacy never used Oil States' drawings and Legacy's drawings were not created from Oil States' drawings notwithstanding evidence that Legacy downloaded dozens of Oil States' drawings and

(continued...)

Exhibit 14, pp. 14, ¶ 29, 21, ¶ 51, and 28, ¶ 10, and Exhibit 15, p. 2.  The State Court

entered the Final Judgment against Debtor on Oil States' claims in the total amount of

$563,335.17, comprised of actual damages of $182,085.67, punitive damages of

$333,686.37 (collectively, the "Judgment Debt") and the $47,563.13 Sanctions Award.

The Judgment Debt and Sanctions Award are several from judgments awarded against

other defendants.  See Amended Motion, Exhibit 15, p. 3.

10.    On March 26, 2021, Oil States served a copy of the Final Judgment on counsel for

each defendant, triggering the thirty-day period for an appeal under Okla. Stat. tit. 12,

§ 990A(A). None of the defendants, including Debtor, perfected an appeal.  See

Amended Motion, Exhibits 1 and 16.

11.    The Appendix filed with the Motion constitutes the entire judgment roll from the State

Court Action.  See Burris v. Burris (In re Burris), 591 B.R. 779, 793-94 (Bank. W.D.

Okla. 2019) (entire judgment roll required to support finding of issue preclusion).

## DISCUSSION

Summary judgment is proper if the movant proves there is no genuine issue of material

fact, and movant is entitled to summary judgment as a matter of law.  Thom v. Bristol-Myers

Squibb Co., 353 F.3d 848, 851 (10th Cir. 2003) (citing Fed. R. Civ. P. 56(c)).  The movant bears

the burden of demonstrating the absence of disputed material facts warranting summary

judgment.  Gough v. Lincoln Cnty. Bd. of Cnty. Comm'rs, 2016 WL 164632, *1 (W.D. Okla.

---

(...continued)
used them to create its own drawings. Amended Motion, Exhibit 14, Findings of Fact ¶¶ 11-14,
16, 17, 21-22, 24-27, 28, 32, 37, 39, 51, 53, and Conclusions of Law ¶¶ 10 and 15.

Jan. 13, 2016) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986)).  As a result, the movant must establish each element of its claim or defense by sufficient, competent evidence to set forth a prima facie case.  <u>Reynolds v. Haskins</u> (<u>In re Git-N-Go, Inc.</u>), 2007 WL 2816215, at *2 (Bankr. N.D. Okla. Sept. 25, 2007) (citing <u>In re Ribozyme Pharm., Inc., Sec. Litig.</u>, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002)).

Summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  <u>Turkal v. Altamira Condominium Ass'n</u> (<u>In re Turkal</u>) 507 B.R. 342, 346 (Bankr. D. Kan. 2014) (quoting <u>Celotex</u>, 477 U.S. at 327).  Summary judgment is warranted in this adversary proceeding.

## I.    <u>DISCHARGE PROTECTS THE HONEST BUT UNFORTUNATE DEBTOR.</u>

"[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'"  <u>Grogan v. Garner</u>, 498 U.S. 279, 286 (1991) (quoting <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 244 (1934)).  But a completely fresh start is limited to the "'honest but unfortunate debtor.'"  <u>Grogan</u>, 498 U.S. at 286-87 (quoting <u>Local Loan Co.</u>, 292 U.S. at 244).  Section 523(a) reflects Congress' decision to exclude certain categories of debts from a debtor's discharge.  <u>Burris v. Burris</u> (<u>In re Burris</u>), 598 B.R. 315, 333 (Bankr. W.D. Okla. 2019) (citing <u>Grogan</u>, 498 U.S. at 287).  Many of Section 523(a)'s subsections aim to prevent the discharge of debts involving a debtor's unacceptable conduct, such as dishonesty, fraud, intentional injury, or morally reprehensible conduct.  <u>Hoffman v. Anstead</u> (<u>In re Anstead</u>),

448 B.R. 202, 207 (Bankr. N.D. Ohio 2011) (citing O'Brien v. Sintobin (In re Sintobin), 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000); Landry v. Dunlop (In re Dunlop), No. 05-1202-JMD, 2006 WL 3827417, at *4 (Bankr. D. N.H. Dec. 27, 2006)).

      Notwithstanding their laudable purpose, the exceptions to discharge under Section 523(a) must be narrowly construed with doubt being resolved in the debtor's favor.  Cobra Well Testers, LLC v. Carlson (In re Carlson), 2008 WL 8677441, at *2 (10th Cir. Jan. 23, 2008); Bellco First Fed. Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir. 1997); Burris, 598 B.R. at 333.  The creditor seeking to except a debt from discharge bears the burden of proving each element of its claim by a preponderance of the evidence.  Grogan, 498 U.S. at 286; Hagmaier v. Cooley (In re Cooley), 551 B.R. 498, 505 (Bankr. W.D. Okla. 2016); Diamond v. Vickery (In re Vickery), 526 B.R. 872, 880 (D. Colo. 2015) (citing Holaday v. Seay (In re Seay), 215 B.R. 780, 785 (10th Cir. BAP 1997)); Bartley v. Jacobson (In re Jacobson), 485 B.R. 255, 261 (Bankr. D. Kan. 2013) (citing Grogan, 498 U.S. at 286).

      In its Amended Motion, Oil States argues the Judgment Debt and Sanctions Award are not dischargeable under Section 523(a)(4) and (6).  Section 523(a)(4) excepts from a debtor's discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" while Section 523(a)(6) excepts from discharge a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity."

      Oil States argues the Judgment Debt, based on the Final Judgment, together with the Sanctions Order and Findings and Conclusions, in the State Court Action conclusively determined Debtor committed larceny from, and inflicted willful and malicious injury on, Oil States and, therefore, issue preclusion applies and mandates summary judgment in favor

of Oil States and against Debtor.  Oil States' reliance on issue preclusion is supported by the

complete judgment roll from the State Court Action, without which this Court would be unable

to determine if issue preclusion applies.  Salazar v. The City of Oklahoma City, 1999 OK 20,

976 P.2d 1056, 1061 (1999) (Oklahoma courts require a party relying on issue preclusion to

"produce - as proof of its terms, effect and validity - the *entire* judgment roll[3] for the case which

culminated in the decision invoked as a bar to relitigation.").

## II.    THE JUDGMENT DEBT PORTION ATTRIBUTABLE TO TRADE SECRET MISAPPROPRIATION IS EXCEPTED FROM DISCHARGE UNDER SECTION 523(a)(4) AS IT ARISES FROM LARCENY.

Oil States argues Debtor's liability for actual and punitive damages resulting from

Trade Secret appropriation arises from larceny and is, therefore, non-dischargeable under

Section 523(a)(4).  Nondischargeability under Section 523(a)(4) may rest on proof of

embezzlement or larceny without requiring proof of a fiduciary relationship.  See Klemens v.

Wallace (In re Wallace), 840 F.2d 762, 765 (10th Cir. 1988).  Such is the case herein as Oil States

never alleges the existence of a fiduciary relationship between Oil States and Debtor.

### A.    Larceny versus Embezzlement.

Oil States must prove the Judgment Debt arises from embezzlement or larceny by Debtor

within the confines of Section 523(a)(4).

_____

[3]The judgment roll includes the petition, the process, return, pleadings subsequent thereto, reports, verdicts, orders, judgments and all material acts and proceedings of the court. Salazar, 976 P.2d at 1061; Genoff Farms, Inc. v. Seven Oaks South, LLC, 249 P.3d 526, 530 (Okla. Ct. App. 2011) (judgment roll is the same as the record and is made up of the petition, process, return, the subsequent pleadings, reports, verdicts, orders, judgments and all material acts and proceedings of the court); Mahmoodjanloo v. Mahmoodjanloo, 160 P.3d 951, 958 n.8 (Okla. 2007).

Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.  Bombardier Capital, Inc. v. Tinkler (In re Tinkler), 311 B.R. 869, 876 (Bankr. D. Colo. 2004) (citing Wallace, 840 F.2d at 765).  The five elements of embezzlement are:  (1) entrustment (2) of property (3) of another (4) that is used or consumed for a purpose other than that for which it is entrusted (5) with fraudulent intent.  Tinkler, 311 B.R. at 876.

On the other hand, "'[l]arceny is proven for Section 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner.'"  Tinkler, 311 B.R. at 876 (quoting Kaye v. Rose (In re Rose), 934 F.2d 901, 902 (7th Cir. 1991)); Chenaille v. Palilla (In re Palilla), 493 B.R. 248, 252 (Bankr. D. Colo. 2013).  Two elements must be established for larceny under Section 523(a)(4):  (i) fraudulent and wrongful taking away of the property of another; with (ii) the intent to convert it to the debtor's use and with the intent to permanently deprive the plaintiff of such property.  Nibbi v. Kilroy (In re Kilroy), 357 B.R. 411, 431 (Bankr. S.D. Tex. 2006) (quoting Smith v. Hayden (In re Hayden), 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000)).

Both embezzlement and larceny have similar elements, with the essential difference being the manner in which property comes into the debtor's possession.  Fleming Mfg. Co., Inc. v. Keogh (In re Keogh), 509 B.R. 915, 937 (Bankr. E.D. Mo. 2014).  With embezzlement, the debtor initially acquires the property lawfully; in contrast, larceny requires the property originally come into the debtor's hands unlawfully.  Tinkler, 311 B.R. at 876; Sierra Chemicals, LLC v. Mosley (In re Mosley), 501 B.R. 736, 745 (Bankr. D. N.M. 2013).  Hence, both embezzlement and larceny are the fraudulent and wrongful taking of another's property.  In this instance,

11

whether the property came into Debtor's hand lawfully or unlawfully, the end result is the same – Debtor wrongfully deprived Oil States of its Trade Secrets.

### B.   <u>Issue Preclusion Applies</u>.

The doctrine of issue preclusion bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding.  <u>Bobby v. Bies</u>, 556 U.S. 825, 834 (2009).  Issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit.  <u>Melnor, Inc. v. Corey</u> (<u>In re Corey</u>), 583 F.3d 1249, 1251 (10th Cir. 2009).  Issue preclusion may be invoked to preclude relitigation of factual issues underlying a determination of dischargeability.  <u>Grogan</u>, 498 U.S. at 284 n.11 ("[P]rinciples of collateral estoppel apply in bankruptcy proceedings."); <u>Nelson v. Tsamasfyros</u> (<u>In re Tsamasfyros</u>), 940 F.2d 605, 606 (10th Cir. 1991); <u>Grassmann v.  Brown</u> (<u>In re Brown</u>), 570 B.R. 98, 112 (Bankr. W.D. Okla. 2017); <u>C & L Supply, Inc. v. Morrow</u> (<u>In re Morrow</u>), 613 B.R. 786, 805 (Bankr. N.D. Okla. 2020).

The Full Faith and Credit Statute, 28 U.S.C. § 1738, directs federal courts to look to the preclusion law of the state in which a judgment is rendered.  <u>Cobb v. Lewis</u> (<u>In re Lewis</u>), 271 B.R. 877, 883 (10th Cir. BAP 2002) (citing <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985)).  In Oklahoma, issue preclusion can be invoked where a court has decided an issue of fact or law necessary to its judgment to prevent the same parties or their privies from relitigating that issue in a subsequent suit brought upon a different claim. <u>Oklahoma Dep't of Public Safety v. McCrady</u>, 2007 OK 39, ¶ 7, 176 P.3d 1194, 1199 (2007); <u>Miller v. Miller</u>, 1998 OK 24, ¶ 25, 956 P.2d 887, 897 (1998).  In other words, it prevents a party

that lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit. <u>Corey</u>, 583 F.3d at 1251.

To establish issue preclusion in Oklahoma, a party must prove four elements:  (i) the party against whom it is being asserted must have been a party to the prior action; (ii) the issue subject to preclusion was actually adjudicated in the prior case; (iii) the adjudicated issue was necessary and essential to the outcome of the prior case; and (iv) the party against whom it is interposed had a full and fair opportunity to litigate the claim or critical issue.  <u>Durham v. McDonald's Rest. of Okla., Inc.</u>, 2011 OK 45, ¶ 5, 256 P.3d 64, 66-67 (2001).  A party asserting issue preclusion cannot succeed unless he proves each of the four elements.  <u>Glover Constr. Co. v. State ex rel. Dep't of Transp.</u>, 2014 OK CIV APP 51, ¶22, 326 P.3d 547, 553 (2014).

Here, Oil States asserts it is entitled to summary judgment on its Section 523(a)(4) claim by virtue of the Default Judgment, the Findings and Conclusions, and the Final Judgment (collectively, the "Judgments").  Oil States labels the conduct giving rise to the Judgments against Debtor, <u>i.e.</u> misappropriation of Oil States' Trade Secrets and other confidential information, as larceny under Section 523(a)(4), which, therefore, precludes Debtor from relitigating whether a wrongful misappropriation occurred in this forum due to issue preclusion.

As the party seeking to preclude litigation, Oil States satisfied its burden of proving each element of issue preclusion.  First, Oil States and Debtor were both parties in the State Court Action from which the Judgments arose.  Second and third, the issue of Debtor's taking of Oil States' Trade Secrets was actually litigated and necessarily determined in the State Court Action. A party seeking to invoke issue preclusion "must show that the issue sought to be precluded was actually litigated and determined in the prior action . . . and that the determination was essential

13

to the decision in the prior action." <u>Miller</u>, 956 P.2d at 897.  An issue is actually litigated and necessarily determined only if:  (i) it is properly raised in pleadings or otherwise submitted for determination in a prior action; and (ii) judgment would not have been rendered but for the determination of that issue.  <u>McCrady</u>, 176 P.3d at 1199 (2007) (citing <u>State ex rel. Oklahoma Bar Ass'n v. Giger</u>, 2004 OK 43, ¶ 13, 93 P.3d 32, 38 (2004)).

At first glance, Debtor's liability for misappropriating Oil States' Trade Secrets does not appear to have been actually litigated since Debtor's liability was determined in the Default Judgment.  However, a party may be estopped from requiring the "actually litigated" element of issue preclusion be met where a default judgment is entered against such party as a sanction or penalty, as was the case with Debtor.  <u>Melnor, Inc. v. Corey</u> (<u>In re Corey</u>), 394 B.R. 519, 527-28 (10th Cir. BAP 2008), <u>aff'd</u>, 583 F.3d 1249 (10th Cir. 2009);  <u>Zilm v. Roberts</u> (<u>In re Roberts</u>), 505 B.R. 555, 567-68 (Bankr. N.D. Okla. 2014).  The Default Judgment was entered as a sanction for egregious discovery abuse and repeated failures to comply with State Court orders.[4] Since Debtor deliberately obstructed the progress of the State Court Action, he effectively waived the "actually litigated" element of issue preclusion.  The damages awarded by the State Court were actually litigated in a bench trial conducted on March 16, 2020.  Amended Motion, Exhibits 14 and 15.  Debtor never appealed, or sought to vacate, either the Default Judgment or the Final Judgment.  Consequently, the Judgments are final judgments in favor of Oil States and

---

[4]The State Court entered the Default Judgment as a sanction for, among other things, discovery abuses and spoliation of evidence, finding the "sanction of default judgment is appropriate for failure to obey multiple Court orders compelling discovery."  Amended Motion, Exhibits 9 and 13.

14

against Debtor in the State Court Action for, among other things, misappropriation of Oil States'
Trade Secrets.  Amended Motion, Exhibit 13.

As to the fourth and final element, at all times Debtor was represented by counsel in the
State Court Action and had a full and fair opportunity to defend and, in fact, actively participated
in defending the claims against him.[5]  Amended Motion, Exhibits 1 and 14.  Thus, the necessary
elements for application of issue preclusion are present.

### C.    Application of Issue Preclusion to the Judgments.

Labeling Debtor's actions as an embezzlement or larceny makes little difference[6] as
Section 523(a)(4) "'excepts from discharge debts resulting from the fraudulent appropriation of
another's property, whether the appropriation was unlawful at the outset . . . or whether the
appropriation took place unlawfully after the property was entrusted to the debtor's case.'"
Kim v. Sun (In re Sun), 535 B.R. 358, 367 n.18 (10th Cir. BAP 2015) (citing 4 Collier on
Bankruptcy ¶ 523.10[2] at 523–77)).  Specific findings of the State Court establishing Debtor's
wrongful appropriation of Oil States' Trade Secrets include:

> Debtor was a mechanical engineer employed by Oil States.  Amended Motion,
> Exhibit 14, p. 10, ¶ 6.

---

[5]Debtor attempts to dispute the effect of the Default Judgment and the Final Judgment in
the State Court Action by claiming he did not have proper representation in the State Court
Action.  Amended Objection, p. 1, ¶ 2.  Such claim should be addressed to the State Court and
cannot be a basis for attacking the validity or effect of the Default Judgment or Final Judgment in
this Court.  In re S-tek I LLC, 625 B.R. 519, 525 (Bankr. D. N.M. 2020) (the "Rooker-Feldman
doctrine precludes the Court from reviewing on the merits, modifying, or setting aside a state
court judgment."); Bednar v. RCB Bank (In re Bednar), 2019 WL 3928844, at *7 (Bankr. W.D.
Okla. Aug. 20, 2019) (preclusive effect must be given to final state court judgments and orders).

[6]The Court views this to be a case of embezzlement rather than larceny as Debtor came
into possession of the Trade Secrets lawfully as an employee of Oil States.  See Tinkler, 311 B.R.
at 876 (citing Wallace, 840 F.2d at 765).

Debtor acted in concert with Decker, Mueller and Legacy Valve to create Legacy and begin its operations with the confidential information and trade secrets of Oil States.  Amended Motion, Exhibit 14, p. 10, ¶¶ 7-10.

As an employee of Oil States, Debtor acquired confidential information of Oil States.  Amended Motion, Exhibit 14, p. 10, ¶ 11.

Debtor downloaded Oil States' technical, trade secret information during his employment at Oil States, downloading at least 87 files of Oil States' technical drawings for compact manifold ball valves from April 17 - May 7, 2017.  These drawings were used by Legacy to create technical drawings for Legacy Valve.  Amended Motion, Exhibit 14, p. 11, ¶ 13.

Debtor took and used Oil States' information and drawings to aid Legacy Valve in establishing its business even though he knew his actions were wrongful.  Amended Motion, Exhibit 14, pp. 11-12, ¶¶ 15 and 20.

Debtor knew that his employment relationship with Oil States prohibited him from using or disclosing Oil States' technical drawings and that downloading such drawings for Legacy Valve's use was unlawful.  Amended Motion, Exhibit 14, pp. 12, ¶ 22 and 21, ¶ 51.

Debtor willfully and maliciously conspired to steal Oil States' Trade Secrets and intentionally took such information to compete against and harm Oil States.  Amended Motion, Exhibit 14, p. 28, ¶ 10.

Debtor knew his actions were wrongful at the time he took Oil States' information to create a valve to compete with Oil States.  Amended Motion, Exhibit 14, p. 12, ¶ 22.

Damages awarded against Debtor for misappropriation of trade secrets: $16,122.50 actual loss; $150,720.69 unjust enrichment; and punitive damages of $32,245.00 and $301,441.37.  Amended Motion, Exhibit 14, p. 35, ¶ A and D.

The State Court's Findings and Conclusions leave no doubt Debtor wrongfully and fraudulently appropriated Oil States' Trade Secrets – he intended to take and use, and did take and use, Oil States' Trade Secrets without its consent and in contravention of his employment terms.  Simply put, Debtor "stole the drawings before leaving Oil States."  Amended Motion, Exhibit 14, p. 34, ¶ 31.

With each of the underlying requirements for application of issue preclusion having been established by Oil States, the undisputed facts before this Court mandate entry of summary judgment on Oil State's Section 523(a)(4) claim (based on embezzlement). Accordingly, the portion of the Judgment Debt attributable to Trade Secret misappropriation is excepted from Debtor's discharge.[7]

## III.    THE ENTIRE JUDGMENT DEBT IS EXCEPTED FROM DISCHARGE PURSUANT TO SECTION 523(A)(6).

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To prevail under Section 523(a)(6), a creditor must prove both a willful act *and* a malicious injury. Panalis v. Moore (In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004); First Am. Title Ins. Co. v. Smith (In re Smith), 618 B.R. 901, 912 (10th Cir. BAP 2020); Reperex, Inc. v. May (In re May), 579 B.R. 568, 593 (Bankr. D. Utah 2017) (citing Moore, 357 F.3d at 1129); Tulsa Spine Hosp., LLC v. Tucker (In re Tucker), 346 B.R. 844, 853 (Bankr. E.D. Okla. 2006). Thus, an intentional tort is required, and debts resulting from recklessness or negligence are not within the scope of Section 523(a)(6). Barenberg v. Burton (In re Burton), 2010 WL 3422584, at *6 (10th Cir. BAP Aug. 31, 2010) (citing Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998)).

For an injury to be willful, there must be a deliberate or intentional injury, not merely a deliberate or intentional action leading to an injury. Smith, 618 B.R. at 912 (citing Geiger, 523 U.S. 57). This description generally encompasses intentional torts, which require the actor

---

[7]The amount of the Judgment Debt attributable to misappropriation of Oil States' Trade Secrets totals $467,094.25:  $165,859.74 in actual damages and $301,234.51 in punitive damages. Amended Motion, p. 7.

intend the consequences of his act and not simply the act itself.  Smith, 618 B.R. at 912 (citing

Geiger, 523 U.S. 57).  "A willful injury may be established by direct evidence that the debtor

acted with the specific intent to harm a creditor or the creditor's property, or by indirect

evidence that the debtor desired to cause the injury or believed the injury was substantially

certain to occur."  Smith, 618 B.R. at 912 (citing In re Longley, 235 B.R 651, 657 (10th Cir. BAP

1999)).  "The Tenth Circuit applies a subjective standard in determining whether a defendant

desired to cause injury or believed the injury was substantially certain to occur."  Bringhurst,

569 B.R. at 823 (citing Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart), 2000 WL

1275614, 229 F.3d 1163 (10th Cir. Sept. 8, 2000) (noting the willful and malicious injury

exception focuses on the debtor's state of mind)); Smith, 618 B.R. at 912.

      For an injury to be malicious, "'evidence of the debtor's motives, including any claimed

justification or excuse, must be examined to determine whether the requisite 'malice' in addition

to 'willfulness' is present.'"  Smith, 618 B.R. at 919 (quoting Dorr, Bentley & Pecha, CPA's,

P.C. v. Pasek (In re Pasek), 983 F.2d 1524, 1527 (10th Cir. 1993)).

> All the surrounding circumstances, including any justification
> or excuse offered by the debtor, are relevant to determine whether
> the debtor acted with a culpable state of mind vis-a-vis the actual
> injury caused the creditor.  A willful and malicious injury requires
> more than negligence or recklessness. . . . For an injury to be
> "malicious," therefore, the debtor's actions must be wrongful. . . .
> In summary, the totality of the circumstances must be examined to
> determine if a wrongful state of mind was present in [Debtor] when
> he caused injury to [Plaintiff].

Smith, 618 B.R. at 919-20 (citations omitted).  "For a debtor's actions to be malicious, they have

to be intentional, wrongful, and done without justification or excuse."  Bertone v. Wormington

(In re Wormington), 555 B.R. 794, 800 (Bankr. W.D. Okla. 2016) (first citing Fletcher v.

Deerman (In re Deerman), 482 B.R. 344, 370 (Bankr. D. N.M. 2012); and then citing Tso v. Nevarez (In re Nevarez), 415 B.R. 540, 544 (Bankr. D. N.M. 2009) ("'Malicious' requires that an intentional act be 'performed without justification or excuse.'")); AVB Bank v. Costigan (In re Costigan), 2017 WL 6759068, at *5 (Bankr. E.D. Okla. Dec. 29, 2017).  "Malice may be implied where the preponderance of the evidence establishes that the debtor committed acts that were 'wrongful and without just cause.'"  Costigan, 2017 WL 6759068, at *5 (citing Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012)).

        To establish Debtor's willful and malicious intent in this adversary proceeding, Oil States again relies on the Judgments and the doctrine of issue preclusion.  As previously highlighted, the State Court specifically found, "by clear and convincing evidence, [Debtor] willfully and maliciously conspired to steal Oil States' trade secrets and confidential business information."  Amended Motion, Exhibit 14, p. 28, ¶ 10.  Further, Debtor took the Trade Secrets in order to compete with and harm Oil States.  Amended Motion, Exhibit 14, pp. 21, ¶ 51 and 28 ¶ 10.  Thus, Debtor deliberately and intentionally stole the Trade Secrets, with the intent to harm Oil States, and without just excuse or justification within the parameters of Section 523(a)(6).[8]

        In fact, Debtor's willful and malicious intent in appropriating Oil States' Trade Secrets is further evidenced by the massive conspiratorial cover-up of Debtor's theft of the Trade Secrets – Debtor's resignation from Oil States, deletion of the Trade Secrets from Debtor's computer and wiping Debtor's phone clean, and spoliation of evidence before and during the course of the

---

        [8]The State Court found nothing reckless or negligent about Debtor's actions.  Debtor's repeated claims in the Amended Objection of good or otherwise valid intentions in taking the Trade Secrets, besides being utterly conclusory and without any support in the record, are belied by the State Court's extensive findings, from which Debtor never appealed.

State Court Action – all in an effort to hide the misappropriation and the willful and malicious use of Oil States' Trade Secrets. Amended Motion, Exhibit 14, pp. 13, ¶¶ 25-27, 14, ¶ 29, 15, ¶ 31, 16, ¶ 32, 17, ¶¶ 37-39, and 30 ¶¶ 17-18. The Judgments leave no doubt Debtor "deliberately and intentionally caused injury to Oil States" and "was motivated by hatred, spite and ill will." Amended Motion, Exhibit 15, p. 2.

As found by the State Court, Debtor willfully and maliciously injured Oil States. Issue preclusion applies with equal force to Oil States' Section 523(a)(6) claim, and the Judgment Debt is excepted from Debtor's discharge pursuant to Section 523(a)(6).

## IV.    THE SANCTIONS JUDGMENT IS EXCEPTED FROM DISCHARGE PURSUANT TO SECTION 523(a)(6).

Oil States also seeks to except the $47,563.13 Sanctions Award entered against Debtor in the State Court Action from Debtor's discharge pursuant to Section 523(a)(6). The same analysis used with respect to the Judgments and application of Section 523(a)(4) and (6) applies to the Sanctions Award.

First, Oil States has established the four elements necessary to apply issue preclusion under Oklahoma law:

1.    Oil States and Debtor were both parties in the State Court Action.

2.    The issue of Debtor's conduct and repeated failure to comply with his discovery obligations, and the resulting cost to Oil States of such conduct, was actually litigated in the State Court Action.

3.    Debtor's culpability in what was labeled the "most egregious abuse of the legal system" was necessary and essential to the State Court Action, eventually giving rise to entry of the Default Judgment.

4.    From the record, Debtor had a full and fair opportunity to litigate the sanctions issue and to avoid the Sanctions Award by simply complying with the State

> Court's orders.  Debtor was represented by counsel through the process (in fact,
> the same counsel representing him in this adversary proceeding).

Durham, 256 P.3d at 66-67.  Consequently, issue preclusion applies to the Sanctions Award.

Second, in order to except the Sanctions Award from Debtor's discharge under Section 523(a)(6), Oil States must establish Debtor's conduct giving rise thereto was ***both*** willful ***and*** malicious.  The Sanctions Order contains "particular and specific findings establishing willful and malicious conduct under [Section] 523(a)(6)."  O'Melveny & Myers v. Hopkins (In re Hopkins), 1999 WL 1243253, at *1 (10th Cir. Oct. 22, 1999).  The State Court specifically found Debtor (and his co-horts) acted "willfully, maliciously, and in bad faith" and intentionally in an effort to prevent Oil States from obtaining the necessary evidence to prove its claims against, among others, Debtor.  Amended Motion, Exhibit 13, p. 6, ¶ 26.  The State Court further found Debtor "flagrantly disobeyed" State Court Orders, hiding information and communications from Oil States, and causing Oil States to expend significant time and resources to ferret out the same. Amended Motion, Exhibit 13, p. 6, ¶ 28.  It would be difficult to locate more succinct and direct fact findings supporting a conclusion Debtor subjectively desired to cause injury to Oil States or at least believed the injury was substantially certain to occur.  Burris, 598 B.R. at 334 (citing Utah Behavior Serv. Inc. v. Bringhurst (In re Bringhurst), 569 B.R. 814, 823 (Bankr. D. Utah 2017) (citing Via Christi Regional Med. Ctr. v. Englehart (In re Englehart), 229 F.3d 1163, *3 (10th Cir. 2000) (the willful and malicious injury exception focuses on the debtor's state of mind))); Murphy v. Spencer (In re Spencer), 541 B.R. 750, 758 (Bankr. D. N.M. 2015)).

The findings of the State Court and the record before this Court are clear – Debtor acted with the specific intent to cause injury to Oil States (beyond that which it had already caused Oil States by stealing its Trade Secrets) by destroying evidence and preventing Oil States from

discovering the truth and the evidence necessary to establish its claims, and knowingly and continually violating discovery orders without valid justification or excuse.  Moore, 357 F.3d at 1129; Scarbrough v. Purser (Matter of Scarbrough), 836 F.3d 447, 453-54 (5th Cir. 2016) ("The record reflects that Scarbrough intentionally concealed evidence when failing to disclose the Secret Recordings to the court after multiple discovery requests were made, willfully violated various court orders, and filed frivolous motions before the court; Scarbrough's 'scorched earth' strategy impacted the litigation strategy of Appellees. The record reflects clear and specific findings as to Scarbrough's state of mind.").  Consequently, Debtor is barred, by application of issue preclusion, from arguing he did not willfully and maliciously injure Oil States in destroying evidence and violating discovery and injunctive orders of the State Court.

The State Court ordered Debtor to pay Oil States $47,563.13 as sanctions for litigation misconduct (somewhat of an understatement of the State Court's actual findings). Amended Motion, Exhibit 9, p. 5.  The State Court found, notwithstanding a duty to preserve evidence, Debtor, along with others, committed spoliation by destroying evidence after such duty began. Amended Motion, Exhibit 9, p. 2.  Further, Debtor, and others, violated the State Court's temporary restraining order by destroying evidence after its entry.  The State Court (Honorable Trevor Pemberton) characterized the conduct of Debtor and his cohorts as "'perhaps the most egregious abuse of the legal system' he had ever seen." Amended Motion, Exhibit 13, pp. 1-2, ¶ 2 and Exhibit 14, p. 29.

For the reasons set forth above, the Court similarly concludes Debtor's litigation misconduct and discovery abuses were willful and malicious and an important cog in the wheel of Debtor's (and the other defendants in the State Court Action) grand scheme to misappropriate

Oil States' Trade Secrets and harm Oil States. The discovery and litigation misconduct was intended to injure Oil States by preventing, or at least significantly hindering, its investigation into the misappropriation of its Trade Secrets and causing the expenditure of significant time and resources by Oil States to uncover the facts. Such misconduct can never be condoned much less excused or justified.

Accordingly, the Sanctions Award is excepted from Debtor's discharge pursuant to Section 523(a)(6).

## CONCLUSION

For the reasons set forth above, (i) the Motion is granted, (ii) the Judgment Debt attributable to Trade Secret misappropriation is excepted from Debtor's discharge pursuant to Section 523(a)(4), and the entire Judgment Debt and Sanctions Award are excepted from Debtor's discharge pursuant to Section 523(a)(6).

IT IS SO ORDERED.

#   #   #

23